UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE J. HARRIS,

        Plaintiff,                        Case No. 1:13-cv-543

v.                                          Honorable Janet T. Neff

CATHY STODDARD et al.,

        Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act (PLRA), PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint, as amended, for failure to state a claim against Defendants Breedlove, Dravek, Gleason, Hogle, Huss, Norwood, and Stoddard. The Court will also dismiss Plaintiff's access-to-the-courts claim, his equal protection claims, and his due process claim regarding the loss of his property. The Court will allow service of the remainder of the complaint against the remaining Defendants.

Also before the Court are multiple motions filed by Plaintiff, including motions for appointment of counsel, for preliminary injunctive relief, and for production of documents. The foregoing motions will be denied.

## Discussion

I. Factual Allegations

Plaintiff Willie J. Harris is a state prisoner incarcerated by the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF). In his complaint, he names the following employees of ICF as defendants: Warden Cathy Stoddard; Deputy Wardens Erica Huss and "Unknown" Norwood; Captain "Unknown" Hogle; Grievance Coordinator "Unknown" Breedlove; Resident Unit Manager (RUM) "Unknown" Ball; Assistant Resident Unit Supervisor (ARUS) "Unknown" Simon; Sgt. "Unknown" Gleason; Officers "Unknown" Booth, "Unknown" Dravek, "Unknown" First, "Unknown" Goodrich, "Unknown" Gregory, "Unknown" James, Troy Jones, "Unknown" Kotowicz, "Unknown" Maxim, "Unknown" McConkey, "Unknown" Olney, and "Unknown" Stevenson; Caseworkers James A. Apol and Mike Moran; an unknown doctor ("Unknown Party #1"); and an unknown mental health supervisor ("Unknown Party #2").

According to the complaint, as amended, Plaintiff filed a grievance against Officer Gregory on January 7, 2013, because Gregory allegedly threatened to harm Plaintiff by poisoning his food, physically assaulting him, and/or destroying his personal and legal property. On February 6, 2013, officers in unit 1 at ICF, including Defendants Stevenson, Jones, Jameson, and Kotowicz, instructed the prison barber to give Plaintiff a "degrading and humiliating" haircut, cutting only a line down the middle of Plaintiff's head. (Compl., docket #1, Page ID#3.) Defendant Apol reported this incident, and on February 7, 2013, Defendant was pulled from his cell to have his hair cut

-2-

properly. Defendants James, Jameson, Kotowicz, and Stevenson allegedly told Plaintiff not to participate in any further investigation of the matter, or he would receive further punishment. Nevertheless, Plaintiff discussed the incident in an interview with Captain Chaple (who is not a defendant in this action). Later that afternoon, unit 1 staff began calling Plaintiff a "snitch." (*Id.*)

On February 14, 2013, Officer Jones entered Plaintiff's cell, ripped up Plaintiff's legal and personal papers, confiscated Plaintiff's medicated creams and deodorants, placed a weapon in Plaintiff's cell, and told Plaintiff, "I suggest you learn to keep your mouth shut." (*Id.*, Page ID##4, 5.)

On February 19, 2013, Officer Gregory ripped up Plaintiff's legal and personal documents in his cell and took some legal mail.

On February 20, 2013, RUM Ball took nine grievances that Plaintiff submitted for processing, but Ball did not turn them in.

From February 20 to March 11, 2013, unit 1 staff denied Plaintiff access to the showers and the yard and took some of his food trays. Plaintiff reported the foregoing conduct at security classification hearings and sent letters to Defendants Stoddard, Huss, Norwood, and Breedlove. Thereafter, first-shift staff in unit 1, including Defendants Booth, Jameson, Jones, Gregory, Kotowicz, Goodrich, Stevenson, Simon, and Ball, threatened to punish Plaintiff if he continued to file complaints. Second-shift staff, including Defendants Olney, McConkey, First, and Maxim, threatened to physically harm Plaintiff if he continued to file grievances.

On March 11, 2013, Officer Booth took legal materials from Plaintiff's cell and threw them on the floor. He then "harassed" Plaintiff by repeatedly beating on his cell door. (Compl.,

Page ID#7.) Booth took more legal materials from Plaintiff on March 26, 2013. On April 6, 2013, Plaintiff claims that Booth was sent to Plaintiff's cell to "harass" him about filing a grievance against Booth. (*Id.*) Booth also refused to feed Plaintiff breakfast and lunch on April 18 and 19, 2013, and refused to feed him dinner on April 20, 2013.

On March 29, 2013, Officers Olney and McConkey entered Plaintiff's cell, ripped up some of Plaintiff personal photographs and legal documents, and put others documents into the toilet. They also poured water and toothpaste on Plaintiff's clothing. Officer First told Plaintiff to "learn how to give good blow jobs," and he and Officer Maxim allegedly refused to let Plaintiff use the prison yard or take a shower during their shifts. They also dumped food on the floor of Plaintiff's cell and called him a "hoe ass nigga." (*Id.*, Page ID#5.) Maxim told Plaintiff that if he continued to file grievances against Maxim or his co-workers, he will throw away Plaintiff's incoming mail. Plaintiff allegedly reported their actions to other officers, but he continued to be harassed.

On April 1, 2013, ARUS Simon allegedly destroyed Plaintiff's copy of a civil rights complaint. On May 20, 2013, Plaintiff gave Simon a grievance to be copied; thereafter, it went missing. Apparently, Simon has destroyed a number of Plaintiff's documents that were turned in for photocopying.

On June 1 and 2, 2013, Officer Dravek told Plaintiff that his "time is coming." (Suppl. to Compl., docket #14-1, Page ID#86.) On June 1, Officer Maxim threatened to physically harm Plaintiff, stating, "I'm going to beat your ass." (*Id.*) On the evening of June 2, Dravek and First refused to feed Plaintiff dinner, stating, "It's not over." (*Id.*)

Plaintiff asserts that he is confined in segregation because he assaulted a prison officer with water and ketchup.[1] In order for him to be released, he must complete several stages of an incentives program. Unidentified prison staff have told him that he will never move through the program if he continues to file grievances.

Plaintiff also claims that the ICF Warden and Deputy Wardens refuse to address the ongoing harassment of Plaintiff by other prison officials, and that Grievance Coordinator Breedlove refuses to process his grievances and has refused to provide step II grievance forms to Plaintiff, thereby preventing Plaintiff from exhausting his administrative remedies. Defendants Stoddard and Huss have allegedly told Plaintiff to stop filing grievances and to "work with staff." (Suppl. to Compl., docket #14-1, Page ID#83.)

Plaintiff further claims that Defendants Apol, Moran, and Unknown Parties ##1,2, conspired to retaliate and discriminate against Plaintiff because he is HIV positive. Plaintiff asserts that he was diagnosed with bipolar disorder before he was incarcerated, and that the foregoing Defendants have stopped his psychotropic medications and refuse to treat his mental illness. Without medication, Plaintiff is prone to assaultive behavior, suicidal thoughts and behavior, depression, and a general inability to function.

Finally, Plaintiff asserts that unidentified officers have told other prisoners that he is HIV positive.

Based on the foregoing allegations, Plaintiff claims that Defendants have violated his rights under the First, Eighth, and Fourteenth Amendments, and that their actions are a form of racial

---

[1]Plaintiff was initially placed in segregation because he attempted to commit suicide; his segregation was extended after he assaulted a prison officer. (*See* Suppl. to Compl., docket #14-1, Page ID#84.)

discrimination. He claims that the wardens at ICF are liable because they failed to properly supervise other officers and failed to correct a pattern of harassment.

As relief, Plaintiff seeks a declaratory judgment and compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies

to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Equal Protection

Plaintiff claims that Defendants, generally, have treated him differently from other prisoners on account of his race and his HIV status. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Plaintiff's allegations on this point are wholly conclusory. Conclusory allegations of discriminatory conduct without specific factual allegations fail to state a claim under § 1983. *See Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)). Consequently, Plaintiff's equal protection claim will be dismissed.

### B. Due Process - Property

Much of Plaintiff's complaint concerns the destruction of his legal documents and other personal property by prison officials. The Fourteenth Amendment prohibits the state from

depriving Plaintiff of his property without due process; however, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of state officials, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112 ¶ B (effective July 9, 2012). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive, 04.07.112 ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held

that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim with respect to the loss of his property will be dismissed.

### C. Access to the Courts

Plaintiff contends that various Defendants have destroyed his legal documents and hindered his ability to litigate unidentified claims. It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, however, a plaintiff must plead actual injury to a non-frivolous claim in pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. To satisfy this pleading

requirement, "the underlying cause of action . . . must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3).

Plaintiff has not alleged actual injury to a pending or contemplated claim, as required by *Lewis* and *Christopher*. He merely contends that prison officials have made it difficult for him to pursue unidentified claims. Consequently, he fails to state an access-to-the-courts claim.

### D. Supervisory Liability

Plaintiff's only allegation against the prison wardens, Defendants Stoddard, Huss, and Norwood, is that they failed to correct the allegedly retaliatory conduct of other prison officials after learning about it through Plaintiff's grievances and complaints. Instead, they told Plaintiff to work with prison staff. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). As the Sixth Circuit has repeatedly emphasized:

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific

>incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). In short, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Stoddard, Huss, and Norwood engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Similarly, Plaintiff's only allegation against Sgt. Gleason and Captain Hogle[2] is that they failed to take action in response to Plaintiff's complaints regarding the allegedly retaliatory behavior of other prison officials, particularly the confiscation and destruction of Plaintiff's documents and other property. (*See* Compl., docket #1, Page ID#8.) Plaintiff has not alleged that Gleason or Hogle engaged in any active unconstitutional conduct. Consequently, Plaintiff also fails to state a claim against them.

### E. Defendant Breedlove

Plaintiff claims that Grievance Coordinator Breedlove, like Defendants Stoddard, Huss, and Norwood, failed to act in response to Plaintiff's complaints. For the reasons stated *supra*, such allegations are not sufficient to state a claim. Plaintiff further claims that Breedlove has not

---

[2]Plaintiff does not identify Sgt. Gleason or Captain Hogle by name in the body of the complaint; however, he alleges that he "repeat[ed]ly" complained to "Sgt" and "Captain," and they would not "address the on going retal[ia]tion harassment." (Compl., docket #1, Page ID#8.) Gleason is the only Sergeant identified in the complaint and Hogle is the only Captain. Moreover, in a grievance attached to the complaint, Plaintiff asserts that he complained to Gleason and Hogle on March 12, 2013, after Defendant Booth slammed the window on Plaintiff's door and other prison officers took Plaintiff's legal mail. (Attach. to Compl., docket #1, Page ID#10.) Thus, the Court generously construes the foregoing allegation in the complaint as referring to Defendants Gleason and Hogle.

processed some of Plaintiff's grievances and has refused to provide step II grievance appeal forms to Plaintiff, thereby preventing him from exhausting available administrative remedies.

Breedlove's alleged failure to comply with prison rules or policy with respect to the prison grievance process does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, Breedlove's failure to process Plaintiff's grievances or to provide grievance appeal forms does not implicate Plaintiff's constitutional rights because Plaintiff does not have a constitutional right to an effective grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Even if Breedlove improperly prevented Plaintiff from accessing the grievance procedure to exhaust that remedy as required by the PLRA, Plaintiff's right of access to the courts for the purpose of filing a civil rights action cannot be compromised by an inability to pursue

institutional grievances. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury to state an access-to-the-courts claim); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement of the PLRA only mandates exhaustion of "available" administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff was improperly denied access to the grievance process for a particular issue, then the process was not available to him, and exhaustion would not be a prerequisite for bringing a § 1983 action based on that issue. In light of the foregoing, Plaintiff fails to state a cognizable claim against Breedlove.

### F. Defendant Dravek

Plaintiff alleges that Dravek told Plaintiff that his "time is coming," "it's not over," and refused to feed Plaintiff a meal. (Suppl. to Compl., docket #14-1, Page ID#86.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The Eighth Amendment is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d at

-13-

954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Dravek arising from his allegedly harassing statements.

Furthermore, in order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "deliberate indifference" to that risk. *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Plaintiff does not allege that the deprivation of one meal by Dravek on one occasion threatened his health or safety. Isolated deprivations of meals to prisoners generally do not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (holding that one meal per

day, over fifteen days, that provided sufficient nutrition to sustain normal health did not violate the Eighth Amendment); *Islam v. Jackson*, 782 F. Supp. 1111, 1114 (E.D. Va. 1992) ("Missing one meal as an isolated event does not deprive an inmate of basic nutritional needs."); *Waring v. Meachum*, 175 F. Supp. 2d 230, 240-41 (D. Conn. 2001) (finding no Eighth Amendment claim where inmate missed two meals and there was no indication that future meals were missed); *Cagle v. Perry*, No. 9:04–CV–1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (finding that deprivation of two meals is "not sufficiently numerous, prolonged or severe to rise to the level of an Eighth Amendment violation"). Thus, Plaintiff fails to state a claim against Dravek.

### G. Remaining Defendants

The Court concludes that Plaintiff states a possible claim against the remaining defendants, Defendants Apol, Ball, Booth, First, Gregory, Goodrich, Kotowicz, Jameson, Jones, Maxim, McConkey, Moran, Olney, Simon, Stevenson, and the unknown doctor and mental health supervisor (Unknown Parties ##1-2).

### III. Motions

#### A. Motions for Production of Documents and Evidence

Plaintiff has filed two motions for production of documents and evidence by Defendants (docket ##6, 7). At this stage of the case, before any pleadings have been served and before Defendants have had an opportunity to respond to the complaint, Plaintiff's motions are premature. Consequently, the foregoing motions will be denied without prejudice.

#### B. Motion for Appointment of Counsel

Plaintiff requests appointment of counsel because he is in segregation, he has limited access to the law library, he has not been able to obtain the assistance of a legal writer, and it is

difficult for him to obtain copies of documents and evidence (docket #16). He contends that several of the Defendants have destroyed his documents or are responsible for processing or approving requests for copies.

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989). Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606.

The Court has considered the foregoing factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Consequently, Plaintiff's motion for appointment of counsel will be denied.

### C. Motion for Preliminary Injunctive Relief

Plaintiff has filed a motion purporting to seek immediate preliminary injunctive relief (docket #3). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by

issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Neither Plaintiff's motion nor his complaint describes the nature of the injunction that he seeks. *Cf.* Fed. R. Civ. P. 65(d) (requiring an injunction to "state its terms specifically" and to "describe in reasonable detail . . . the act or acts restrained or required"). Plaintiff merely argues that he is entitled to one. As a result, it is impossible to determine whether a preliminary injunction is warranted at this stage, or to fashion an appropriate order granting one. Thus, Plaintiff's motion for preliminary injunctive relief will be denied without prejudice.

## **Conclusion**

For the reasons stated herein, Plaintiff's motion for preliminary injunctive relief (docket #3), motions for production of documents and evidence (docket ##6, 7), and motion for appointment of counsel (docket #16) will be denied. In addition, after conducting the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's access-to-the-

courts claim, his equal protection claims, his due process claim with respect to the loss of his property, and his claims against Defendants Breedlove, Dravek, Gleason, Hogle, Huss, Norwood, and Stoddard, must be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will allow service of the remaining claims in the amended complaint against the remaining Defendants.

An Order consistent with this Opinion will be entered.


Dated: __September 10, 2013__           __/s/ Janet T. Neff__
                                        Janet T. Neff
                                        United States District Judge