UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE HARRIS,

        Plaintiff,                                Hon. Janet T. Neff

v.                                                    Case No. 1:13-CV-543

CATHY STODDARD, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. #121). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.

## BACKGROUND

Plaintiff initiated this action on April 12, 2013, against numerous individuals. (Dkt. #1). Plaintiff subsequently filed several motions to amend and supplement his complaint. (Dkt. #5, 8, 14, 15, 18, 22). On September 10, 2013, the Court granted Plaintiff's motions. (Dkt. #23). Accordingly, the operative complaint in this matter is the original complaint, docket entry #1, supplemented by the allegations in docket entry #14. (Dkt. #23). Docket entries #5, 8, 15, 18, and 22 are considered "supplemental exhibits to [Plaintiff's] complaint." (Dkt. #23). On October 31, 2013, and again on August 29, 2014, Plaintiff submitted proposed amended complaints. (Dkt. #51, 81). Because Plaintiff did not receive leave of court or Defendants' consent to submit either proposed pleading, such are not

properly before the Court. *See* Fed. R. Civ. P. 15(a). The following allegations are contained in Plaintiff's properly amended complaint.

Plaintiff filed a grievance against Officer Gregory on January 7, 2013, because Gregory allegedly threatened to harm Plaintiff by poisoning his food, physically assaulting him, and/or destroying his personal and legal property. On February 6, 2013, Defendants Stevenson, Jones, Jameson, and Kotowicz, instructed the prison barber to give Plaintiff a "degrading and humiliating" haircut, cutting only a line down the middle of Plaintiff's head. Defendant Apol reported this incident, and on February 7, 2013, Defendant was pulled from his cell to have his hair cut properly. Defendants James, Jameson, Kotowicz, and Stevenson allegedly told Plaintiff not to participate in any further investigation of the matter, or he would receive further punishment. Plaintiff later discussed the incident with Captain Chaple after which prison staff began calling Plaintiff a "snitch."

On February 14, 2013, Officer Jones entered Plaintiff's cell, ripped up Plaintiff's legal and personal papers, confiscated Plaintiff's medicated creams and deodorants, placed a weapon in Plaintiff's cell, and told Plaintiff, "I suggest you learn to keep your mouth shut." On February 19, 2013, Officer Gregory ripped up Plaintiff's legal and personal documents in his cell and took some legal mail. On February 20, 2013, Plaintiff submitted to RUM Ball nine grievances, but Ball failed to submit the grievances for processing.

From February 20, 2013, through March 11, 2013, prison staff denied Plaintiff access to the showers and the yard and took some of his food trays. Plaintiff reported the foregoing conduct at security classification hearings and sent letters to Defendants Stoddard, Huss, Norwood, and Breedlove. Thereafter, prison staff, including Defendants Booth, Jameson, Jones, Gregory, Kotowicz, Goodrich, Stevenson, Simon, and Ball, threatened to punish Plaintiff if he continued to file complaints. Defendants

Olney, McConkey, First, and Maxim threatened to physically harm Plaintiff if he continued to file grievances.

On March 11, 2013, Officer Booth took legal materials from Plaintiff's cell and threw them on the floor. Booth took more legal materials from Plaintiff on March 26, 2013. On April 6, 2013, Booth harassed Plaintiff for filing a grievance against him. Booth also refused to provide Plaintiff breakfast and lunch on April 18 and 19, 2013, and refused to provide him dinner on April 20, 2013.

On March 29, 2013, Officers Olney and McConkey entered Plaintiff's cell, ripped up some of Plaintiff personal photographs and legal documents, and put others documents into the toilet. They also poured water and toothpaste on Plaintiff's clothing. Officer First told Plaintiff to "learn how to give good blow jobs," and he and Officer Maxim refused to let Plaintiff use the prison yard or take a shower during their shifts. They also dumped food on the floor of Plaintiff's cell and called Plaintiff a "hoe ass nigga." Maxim told Plaintiff that if he continued to file grievances against Maxim or his co-workers, he would throw away Plaintiff's incoming mail. Plaintiff reported this conduct to other officers, but nevertheless continued to suffer harassment.

On April 1, 2013, ARUS Simon destroyed Plaintiff's copy of a civil rights complaint. Simon also destroyed a number of Plaintiff's documents that were submitted for photocopying. On June 1 and 2, 2013, Officer Dravek told Plaintiff that his "time is coming." On June 1, Officer Maxim threatened to physically harm Plaintiff, stating, "I'm going to beat your ass." On the evening of June 2, Dravek and First refused to feed Plaintiff dinner, stating, "It's not over."

Plaintiff is confined in segregation because he assaulted a prison officer with water and ketchup. To secure his release, Plaintiff must first complete several stages of an incentives program.

Unidentified prison staff have told Plaintiff that he will never move through the program if he continues to file grievances.

The warden and deputy wardens refuse to address the ongoing harassment Plaintiff suffers at the hands of prison officials. Moreover, the Grievance Coordinator refuses to process his grievances and has refused to provide step II grievance forms, thereby preventing Plaintiff from exhausting his administrative remedies. Defendants Stoddard and Huss have instructed Plaintiff to stop filing grievances and to "work with staff." Defendants Apol, Moran, and Unknown Parties #1 and 2 conspired to retaliate and discriminate against Plaintiff because he is HIV positive. Specifically, these Defendants discontinued Plaintiff's mental health treatment.

On September 10, 2013, the Honorable Janet T. Neff issued an opinion dismissing Plaintiff's access to the courts, equal protection, and due process claims. (Dkt. #24-25). Judge Neff also dismissed Plaintiff's claims against Defendants Breedlove, Dravek, Gleason, Hogle, Huss, Norwood, and Stoddard. (Dkt. #24-25). Plaintiff's remaining claims against Defendants Apol, Ball, Booth, First, Gregory, Goodrich, Kotowicz, Jameson, Jones, Maxim, McConkey, Moran, Olney, Simon, Stevenson, and Unknown Parties #1 and #2 were permitted to go forward. (Dkt. #24-25). The remaining named Defendants now move for summary judgment.

**SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential

element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,'

and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Retaliation**

Plaintiff has asserted various claims of unlawful retaliation. The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

With respect to causation, courts recognize that retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004) ("conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"); *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). Moreover, the mere existence of temporal proximity is insufficient by itself to establish the requisite causal connection. *See Reynolds-Bey v. Harris*, 428 Fed. Appx. 493, 504 (6th Cir., Apr. 13, 2011).

On summary judgment, the causation element is analyzed under the burden-shifting framework articulated in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). *See Eby*, 481 F.3d at 441-42. Accordingly, even if Plaintiff demonstrates that his protected

conduct "was a motivating factor in the defendant's action," Defendant is entitled to summary judgment if he demonstrates that he "would have taken the same action even without the protected activity." *Id.*

Defendants assert that they are entitled to summary judgment on Plaintiff's retaliation claims. For reasons indicated below, the Court will separately address the claim for relief by Defendants Apol and Moran and the claim for relief by the remaining defendants.

### A. Defendants Apol and Moran

Plaintiff alleges that Defendants Apol and Moran unlawfully retaliated against him by discontinuing his psychotropic medications and refusing to treat his mental illness. Defendants Apol and Moran have each submitted affidavits in which they assert that their treatment decisions regarding Plaintiff's care were not motivated by Plaintiff's protected conduct. (Dkt. #122, Exhibit B). Plaintiff has presented no evidence to the contrary. Accordingly, the undersigned recommends that Defendants Apol and Moran are entitled to summary judgment as to Plaintiff's retaliation claims.

### B. Remaining Defendants

Defendants assert that they are entitled to relief because "Plaintiff has not suffered an adverse action." (Dkt. #122 at Page ID#490). As the Sixth Circuit has recognized, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). As the *Bell* court further stated, "while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out *only inconsequential actions*." *Id.* at 603. Accordingly, "unless the claimed retaliatory action is truly

'inconsequential,' the plaintiff's claim should go to the jury." *Id.* Defendants have failed to articulate a persuasive argument or submit admissible evidence[1] supporting the conclusion that the allegations in question are insufficiently adverse to maintain a claim of unlawful retaliation. To the contrary, Plaintiff alleges that he suffered conduct such as threats of physical violence, deprivation of food, destruction of personal property, loss or destruction of legal materials, and planting of evidence. These matters cannot reasonably be characterized as inconsequential.

Defendants next assert that they are entitled to relief because "cell searches are not retaliatory in nature." (Dkt. #122 at Page ID#490). This argument is also unpersuasive. First, many of Plaintiff's retaliation claims do not concern "cell searches" or anything remotely related to "cell searches." As for the allegations that concern or occurred within Plaintiff's cell, Plaintiff has not alleged that Defendants subjected him to mere "cell searches." Rather, as described above, Plaintiff alleges that Defendants entered his cell and destroyed his personal property, destroyed legal documents, and, in one instance, planted a weapon in his cell. These allegations extend well beyond mere "cell searches" and are more than sufficient to satisfy the adverse action prong of the analysis. Plaintiff has likewise plead facts sufficient, at this juncture, to preclude summary judgment on causation grounds.

Finally, Defendants assert that relief is appropriate because "Plaintiff makes no real allegation of injury or damages concerning the remainder of the adverse actions he allegedly suffered from the Defendants." (Dkt. #122 at Page ID#491-92). This argument fails for at least two reasons. First, Defendants' failure to reasonably develop or articulate this argument constitutes waiver thereof.

---

[1] Defendants did submit one item of evidence concerning Plaintiff's claim that he was subjected to a "degrading and humiliating haircut." (Dkt. #1 at Page ID#3). Defendants have submitted a copy of a memorandum regarding the results of an investigation that was allegedly conducted into the incident in question. (Dkt. #122, Exhibit A). The Court cannot consider this memorandum in support of Defendants' motion, however, as such constitutes inadmissible hearsay. See, e.g., *Rogers v. Lilly*, 292 Fed. Appx. 423, 428 n.3 (6th Cir., Aug. 22, 2008) ("only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment").

*See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same). Second, Defendants' argument is unpersuasive as Plaintiff clearly alleges that he was subjected to adverse action sufficient to maintain claims of unlawful retaliation. Accordingly, the undersigned recommends that Defendants Apol, Ball, Booth, First, Gregory, Goodrich, Kotowicz, Jameson, Jones, Maxim, McConkey, Moran, Olney, Simon, Stevenson are not entitled to summary judgment as to Plaintiff's retaliation claims.

## II.     Qualified Immunity

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated. *Id.* Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996). The question whether a defendant enjoys qualified immunity is a question of law for the Court to resolve. *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity. *See Callahan*, 555 U.S. at 232. On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted. The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right." *Id.* The inquiry whether a particular right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (citing *Saucier*, 533 U.S. at 201). The contours of the right in question "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 202). The focus of this inquiry is "on whether the officer had fair notice that her conduct was unlawful." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005).

Where neither the motion for qualified immunity nor the opposition thereto is supported by evidence, the first step of the qualified immunity analysis focuses on the allegations in the plaintiff's complaint and whether such state a claim for violation of the plaintiff's constitutional rights. If, on the other hand, the motion for qualified immunity and/or the opposition thereto are supported by evidence, such must be considered pursuant to the summary judgment standard articulated above. Thus, if the evidence establishes that the defendant did not violate the plaintiff's constitutional rights, qualified immunity is appropriate. *See, e.g., Scott v. Harris*, 550 U.S. 372, 377-86 (2007) (officer entitled to

qualified immunity where evidence was such that "no reasonable jury" could have concluded that officer violated the plaintiff's constitutional rights). Likewise, if the right in question was not "clearly established" at the time the defendant acted, the defendant is entitled to qualified immunity.

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself." *Fisher*, 398 F.3d at 845 (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)). In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Fisher*, 398 F.3d at 845-46 (quoting *Seiter*, 858 F.2d at 1177). A single idiosyncratic opinion from another circuit's court of appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question. *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In determining whether a defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of his actions in light of clearly established law as it existed when he engaged in the challenged conduct. *See Anderson*, 483 U.S. at 640; *Harlow*, 457 U.S. at 818; *Fisher*, 398 F.3d at 845. Accordingly, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202). Finally, while it "is often appropriate" to evaluate qualified immunity claims by analyzing the two analytical steps in sequence, such is no longer mandated. *See Callahan*, 555 U.S. at 236. As the *Callahan* Court stated, "[t]he judges of the district courts. . .should be permitted to

exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Defendants assert that they are entitled to qualified immunity on two grounds. First, Defendants assert that "dismissal should be granted on the first prong of the qualified immunity analysis [because] Plaintiff has failed to plead a cognizable federal cause of action on any of the claims alleged in the complaint." (Dkt. #122 at Page ID#493). The Court has already determined that the claims remaining in this matter "plead a cognizable federal cause of action." This argument is, therefore, rejected.

Defendants next assert that qualified immunity is appropriate because "it is not up to Defendants to prove that the law was clearly established" when they acted. (Dkt. #122 at Page ID#493). Defendants are correct that "once [qualified immunity is] raised, it is the plaintiff's burden to show that the defendants are not entitled to qualified immunity." *Iswed v. Caruso*, 573 Fed. Appx. 485, 488 (6th Cir., July 22, 2014). While not artfully stated, Plaintiff responds that the unlawful nature of the alleged conduct is obvious. The Court agrees. No reasonable officer could have believed that the actions alleged by Plaintiff did not constitute a clear violation of Plaintiff's First Amendment right to be free from unlawful retaliation. *See Thaddeus-X*, 175 F.3d at 394-99. Accordingly, the Court recommends that the motion for qualified immunity asserted by Defendants Apol, Ball, Booth, First, Gregory, Goodrich, Kotowicz, Jameson, Jones, Maxim, McConkey, Moran, Olney, Simon, Stevenson be denied.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #121), be **granted in part and denied in part**. Specifically, the

undersigned recommends that Defendants Apol and Moran are entitled to summary judgment as to Plaintiff's retaliation claims. The undersigned further recommends that Defendants Apol, Ball, Booth, First, Gregory, Goodrich, Kotowicz, Jameson, Jones, Maxim, McConkey, Moran, Olney, Simon, Stevenson are neither entitled to summary judgment as to Plaintiff's retaliation claims nor entitled to qualified immunity with respect to such claims.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: August 19, 2015  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge